22 So.2d 662

**STAFFORD'S ESTATE (COOPER, Substituted Plaintiff) v. PROGRESSIVE NAT. FARM LOAN ASS'N.**

No. 37653.

April 30, 1945.

Rehearing Denied June 5, 1945.

Harold Moses, of New Orleans, and Carroll Buck, of Amite, for defendant-appellant.

W. S. Rownd, of Hammond, for substituted plaintiff-appellee.

HAMITER, Justice.

Defendant, the Progressive National Farm Loan Association, has appealed suspensively from a judgment rendered against it and in favor of William Chester Cooper, the substituted plaintiff herein. The action is predicated solely on defendant's promissory note in the principal amount of $2,151.67 held and owned by such plaintiff.

■ A motion to dismiss the appeal, grounded on the proposition that the transcript was not filed in this court before the expiration of the return date, was tendered by appellee; however, it has since been abandoned. But irrespective of the abandonment, the motion is without merit. Appellant obtained an extension of time for filing the transcript, pursuant to Code of Practice, Article 883, and within the extended period it was received here.

Appellant is a corporation organized under the provisions of an act of Congress called the Federal Farm Loan Act, 12 U.S. C.A. § 641 et seq., and through it the Federal Land Bank of New Orleans makes loans on farm mortgage security. Among its officers is a secretary-treasurer, selected by the Board of Directors, some of the duties of whom are to act as custodian of its funds; to pay over to borrowers all sums received for their account from the Bank upon first mortgages; and to collect, receipt for, and transmit to the Bank payments of interest, amortization installments, or principal arising out of loans made through the Association. Such official is required to furnish a surety bond for the proper performance of his duties; and he is paid such compensation as the Association's Board of Directors determines.

On June 10, 1928, William Chester Cooper was elected secretary-treasurer of the defendant Association and he retained that title until the latter part of 1931, during most of which period his brother, M. H. Cooper, was its president. When so elected there was in force and effect a resolution of the Association's Board of Di-

rectors, dated March 7, 1922, providing for the collecting of certain fees from applicants for farm loans, and also stating as follows:

"Be it resolved further, that the compensation of the Secretary-Treasurer of this Association shall be seventy-five per centum of the total amount of fees collected as above provided, in addition to which he shall also receive a fee of $2.50 for each quarterly report and $5.00 for each annual report submitted to the Farm Loan Board, such compensation to be paid from the general funds of the Association."

In January, 1930, appellee's bond as secretary-treasurer was cancelled by the surety thereon. This action occurred when appellee refused to deliver to the Federal Land Bank of New Orleans certain funds he had collected from its mortgagors, he insisting that such Bank was indebted to him, and the surety was required to pay the sums withheld. For some time thereafter, however, he remained in office; but while he so continued the Bank refrained from transacting any business with and through the Association.

At a meeting of the Association's Board of Directors held on August 3, 1931, there being present M. H. Cooper (President), Thomas H. Stanga, H. L. Edwards, Robert Stanga, and William Chester Cooper (Secretary-Treasurer), a resolution was adopted reciting, in so far as pertinent here, that, "Be it resolved that the salary of the Secretary-Treasurer be fixed at $50.00 per month."

Nine days later, specifically on August 12, 1931, the Association, through its president, M. H. Cooper, executed the note involved in this action. The instrument is payable to the order of the Association and endorsed by it in blank, is for $2151.67, together with 8% per annum interest from date, and is due twelve months after date. Also endorsing the note were Robert Stanga and William Chester Cooper.

During the following month of September, 1931, on the 25th day thereof, the Association was completely reorganized. At the annual stockholders' meeting held on that day all of its officers and directors were replaced by others.

On June 16, 1934, the instant action to recover judgment on the above-described note was commenced through the filing of a petition by Mrs. E. M. Stafford, administratrix of the Estate of E. M. Stafford, deceased, she alleging therein that the Progressive National Farm Loan Association is indebted to the named Estate for the principal amount of the note, of which it is the holder and owner for a valuable consideration, together with interest and attorney's fees.

The district court, on maintaining exceptions of no cause and no right of action tendered by defendant, dismissed the suit; and from the judgment the administratrix appealed to this court.

On January 31, 1941, during the pendency of the appeal and prior to a hearing thereon, counsel for William Chester Cooper presented a motion asking to be substituted as party plaintiff. Attached to it was Cooper's affidavit of January 30, 1941, declaring that on March 14, 1932, he placed the note in the hands of the late E. M. Stafford, an attorney at law of New Orleans, for collection; and that after the death of such attorney the administratrix, not knowing that affiant was the owner of it, instituted suit thereon. Also attached to the motion were a copy of E. M. Stafford's receipt (dated March 14, 1932) for the note; a copy of a court order (dated July 13, 1937) authorizing the administratrix to assign the note to Cooper; and a notarial act (dated January 3, 1938) evidencing the assignment. On the showing made Cooper was substituted as party plaintiff. Thereafter, through his counsel, he moved to remand the case so that he could introduce evidence in support of his demand. After a hearing on this motion, the court overruled the exceptions of no cause and no right of action (previously sustained by the trial court) and remanded the case for further proceedings according to law. 198 La. 122, 3 So.2d 532.

On the trial of the merits of the case, following the remanding, the district court refused to sustain any of the numerous defenses urged, and it rendered the judgment in favor of the substituted plaintiff from which the present appeal is being prosecuted.

In this court the principal contention of the appellant Association is that the execution of the note was unauthorized and therefore it is null and void.

The record does not clearly disclose whether the note was given to appellee to liquidate a claim asserted by him against

the Federal Land Bank of New Orleans, or whether to represent an obligation for salary due him by the defendant Association. Some of the testimony of plaintiff indicates that it might have been for the first stated purpose. For example he testified:

"Q. Mr. Cooper, I don't believe you claim in this particular suit, that the Federal Land Bank owes you any money? A. Yes.

"Q. In this suit? A. Yes— because they stuck their nose in a fight that was going on.

"Q. But this is based on what the Association owed to you? A. Yes and I would have been paid if you had stayed out.

"Q. You say the Association owes you this money? A. The Association owed me that money and you fellows made yourselves liable by tearing in.

"Q. Isn't it correct that in this suit No. 4214 [another action styled William Chester Cooper v. Federal Land Bank of New Orleans], in your testimony, a copy of which is in the record, you said the bank owed you that amount. Here is the question and the answer is right there. A. That had nothing to do with this.

"Q. You testified here that the bank owed you $2000.00? A. That's right.

"Q. And now you say it is the Association? A. The Association did owe it and they gave me a note and I say the bank made themselves liable because they dabbled in there. You fellows just picked up a cold trail and run it." (Brackets ours).

■ Of course, if the debtor of appellee is actually the Federal Land Bank of New Orleans and not the defendant Association, the note involved herein is without consideration; and his recourse is against the Bank. The two organizations are separate and distinct legal entities.

Appellee, however, insists that the defendant Association owed him for back salary at $50 per month and gave its note therefor. In this connection, on the trial of the case, he testified:

"Q. On what basis is that note supposed to have been figured as your salary? A. $50.00 a month.

"Q. From when? A. Figured from January 10, 1928, up until that time that we made the note [August 12, 1931]". (Brackets ours).

A computation of the $50 per month salary for the period of time intervening between January 10, 1928, and August 12, 1931,—three years, seven months, one day —furnishes the exact amount for which the note was made, namely $2,151.67.

Now what was the authority for the execution of the corporation's note for that back salary?

■ When, on the mentioned date of January 10, 1928, appellee commenced his position as secretary-treasurer of the Association there was in force and effect, as above shown, a resolution of the Board of Directors providing for the payment of his compensation on a fee basis (not on a salary basis); 75% of certain fees collected from applicants for loans would be paid him for his efforts. That resolution, in

so far as the record shows, was in no manner changed or altered until August 3, 1931, which was only nine days before the execution of the note and less than two months prior to the complete reorganization of the Association and the replacement of appellee. On that date of August 3, 1931, the Board of Directors "resolved that the salary of the secretary-treasurer be fixed at $50.00 per month."

Undoubtedly this last-mentioned resolution was the basis for the giving of the note; there was none adopted which specifically authorized the instrument's execution.

The language of the resolution, however, indicates that it was to have only prospective, not retroactive, operation; it is wholly silent with reference to the payment of any back salary. Too, under the law it must be interpreted as applying only to future salary.

In Crichton et al v. Webb Press Company, Ltd., 113 La. 167, 36 So. 926, 932, 67 L.R.A. 76, 104 Am.St.Rep. 500, this court said:

"The salaries as fixed are not too large, but the resolutions fixing them can, as a matter of course, have operation only for the future. There cannot be any retroactive increase of salary, or voting of back pay."

The Crichton case, along with many decisions from other states, is cited in 40 A. L.R. page 1432 in connection with the statement:

"By the clear weight of authority bonuses cannot be granted to officers or directors —at least, as against the protest of any stockholder—by way of compensation for services already rendered gratuitously, or by way of increased compensation for services already rendered for a prescribed compensation."

It is said in Fletcher's Cyclopedia of the Law of Private Corporations, Vol. 5, Section 2140, that:

"It is a well-recognized and inflexible rule that directors or managing officers of a corporation cannot legally vote to themselves or other officers compensation for past services, where there is no agreement that such officers should be paid. The reason of the rule is that officers are not impliedly entitled to compensation for services rendered, and accordingly a payment for services which have been voluntarily rendered is void as without consideration and is also ultra vires as a misapplication of the corporate funds.

"Under this rule it has been held that directors cannot vote increases of salary to themselves for services already performed under a contract where a stipulated salary was fixed, and claims for compensation which are evidently afterthoughts will not be allowed."

In Thompson on Corporations, Vol. 3, Section 1879, the rule is stated as follows:

"From the rule already asserted that to entitle an officer or director to recover compensation there must be some statute or by-law providing for the same or some contract made in advance, either express or implied, it follows as a corollary that such officers can not be voted compen-

sation after the services have been rendered. The entire doctrine of compensation for officers and directors is against the theory of back pay. * * *."

To the same effect is the pronouncement found in 19 C.J.S., Corporations, § 804, that:

"Past services. Regardless of whether an express contract is necessary or whether recovery may be had on an implied promise, the agreement must have existed prior to the rendition of the services; the voting or payment of compensation to an officer or director for services already performed without an agreement express or implied for remuneration is without consideration and void. * * *"

The record of the instant case discloses the existence of neither an express nor an implied agreement prior to the resolution of August 3, 1931, for payment to appellee of compensation on a salary basis. To the contrary, it shows that he was to be compensated solely from certain prescribed fees paid by applicants for loans. Therefore, since the note was given entirely for unauthorized back salary and this action is predicated solely on the note, the demands of appellee herein must be rejected.

It may be that appellee has not been paid by the Association the fees to which he was entitled under the resolution of March 7, 1922 (no evidence on this proposition is before us), or that the Federal Land Bank of New Orleans is indebted unto him. If he has any rights of that kind, our judgment herein will not foreclose them.

For the reasons assigned, the judgment appealed from is reversed and set aside, and it is now ordered that the demands of plaintiff be rejected and his suit dismissed, all at his costs.

HIGGINS, J., takes no part.