152 So.2d 261 (1963)
Lester F. ALEXANDER, Jr.
v.
Joseph D. LINDSAY et al.
No. 959.
Court of Appeal of Louisiana, Fourth Circuit.
April 1, 1963.
Rehearings Denied May 6, 1963.
Certiorari Refused June 28, 1963.
*263 Milling, Saal, Saunders, Benson & Woodward, W. S. Shirley, Jr., New Orleans, for plaintiff-appellant.
Pilie, Nelson & Limes, M. Arnaud Pilie, New Orleans, for defendants-appellees.
Before YARRUT, JANVIER and HALL, JJ.
HALL, Judge.
This is a stockholder's derivative action brought by plaintiff as the owner of 50% of the stock of Pecan Isle Corporation in which he seeks to compel the return to the corporation of funds which he avers were illegally and improperly disbursed, primarily to its officers-directors.
Plaintiff's original petition named Joseph D. Lindsay, a director and president of the corporation, as the only individual defendant. Lindsay filed an answer to which he attached a resolution, adopted by the two other directors subsequent to the suit, purportedly ratifying all disbursements made by Lindsay as president of the corporation. Thereafter plaintiff, by supplemental petition joined these two directors (Rene A. Harris and Bernard W. Tabony, Jr.) as parties defendant.
After trial on the merits judgment was rendered in favor of all three defendants, dismissing plaintiff's suit. Plaintiff appealed.
Pecan Isle Corporation is a Louisiana corporation organized for the principal purpose of subdividing, developing and selling campsites on a 7-acre island in False River in Point Coupee Parish. It was organized in September 1960 with a paid-in capital, of $1,000.00 represented by 10 shares of stock having a par value of $100.00 each. The incorporators, directors, officers and sole stockholders were the three defendants, namely:
Joseph D. Lindsay, President, 4 shares
Rene A. Harris, Vice-president, 5 shares
Bernard W. Tabony Jr., Secretary-Treasurer, 1 share.
In March 1961 plaintiff, at the request of the defendants, invested $20,000.00 cash in the corporation, for which he was issued 10 shares of its stock and $100,000.00 of unsecured, non-interest bearing notes of the corporation.
At a joint meeting of the stockholders and directors of the corporation held at that time (March 13, 1961) plaintiff was elected as an additional vice-president but not a director, the three member Board of Directors remaining as originally constituted. At this same meeting a resolution was adopted authorizing Joseph D. Lindsay as president to sign all checks, notes and obligations of the corporation, and to execute all legal documents pertaining to its business.
At the time plaintiff made his investment the corporation had no money and owed the full purchase price of $25,000.00 on its only asset which was the small island in False River. The record reveals that within six months the $20,000.00 cash received from plaintiff had been expended by means of checks signed by Lindsay, the corporation was without funds, still owed the purchase price of the island, and had made no appreciable improvements on the property.
Plaintiff complains that the defendants led him to believe his $20,000.00 investment would be used to develop and improve the property, but, instead, some of the money was used to pay accumulated debts and the remainder was illegally paid to its officers-directors for "services" and travelling and other expenses. He complains *264 particularly of the following disbursements, totalling $15,767.00:

A. Payments made to Lindsay or his
 wholly owned corporations
 Lindsay Realty Corporation $ 6,300.00
 Lindsay Realty Corporation
 and Pontchatrain
 Development Corporation 5,400.00
 Travel expenses 450.00
 Motels 105.00
 __________
 Total to Lindsay $12,255.00
B. Payments made to Tabony
 For supervising $ 2,525.00
C. Payments made to Harris
 Engineering fee $ 800.00
 Out of pocket expense 187.00
 __________
 $ 987.00.

Other items complained of were disbursements made to pay debts of the corporation which existed prior to plaintiff's investment therein, such as an indebtedness for gravel, for newspaper advertising and for attorney's fees.
It should be borne in mind, as the District Judge emphasized in his written reasons for judgment, that this action is a stockholder's derivative action seeking recovery in the name of and for the benefit of the corporation of funds allegedly disbursed illegally and without authority of its Board of Directors. (See Fletcher Cyclopedia of Corporations, Vol. 5, Ch. 16, Sec. 2170-1, p. 644). Plaintiff is not seeking here to set aside his stock purchase and loan agreement. In fact plaintiff is seeking no relief personally. For this reason whether the defendants as individuals made any false representations or promises to plaintiff in order to induce him to invest in the corporation is immaterial. The sole question is whether the disbursements complained of may be recovered by the corporation as being illegal or not properly authorized by the directors.
Before considering the disbursements in detail it is necessary to observe that, in our opinion, Lindsay Realty Corporation and Pontchatrain Development Corporation are mere creatures of the defendant, Joseph D. Lindsay. He is the president of both corporations and he and his wife are the sole stockholders, hence the disbursements made to these two corporations must stand on the same footing as though made to Lindsay personally.
The $6,300.00 item paid to Lindsay Realty Corporation represented the repayment of loans and advances made to Pecan Isle Corporation by Lindsay and Lindsay Realty Corporation prior to plaintiff's investment. This indebtedness was well known to all of the original stockholders and directors of Pecan Isle Corporation and they acquiesced in its repayment. A careful reading of the record convinces us that the indebtedness was made known to plaintiff at the time of his investment and that he likewise acquiesced in its repayment. Manifestly Pecan Isle Corporation has no right to recover this disbursement since it was acquiesced in by all of its directors and all of its stockholders including plaintiff.
The $5,400.00 item was paid to Lindsay Realty Corporation and Pontchatrain Development Corporation for "supervisory fees". These "services" were performed in the six month period subsequent to plaintiff's investment, and consisted of "services" rendered by Lindsay himself, as president of these corporations, in making trips to Baton Rouge in an endeavor to hire salesmen to sell the Pecan Isle campsites; running advertisements in the Baton Rouge papers for salesmen; interviewing and trying out salesmen for three or four days at a time, all without success in obtaining salesmen on a commission basis.
The $450.00 item for travel expenses and the $105.00 item for motels allegedly represented Lindsay's expenses on his Baton Rouge trips.
Bernard W. Tabony Jr. was also paid $2,525.00 for "supervising" during the six months following plaintiff's investment.
*265 Prior to the organization of Pecan Isle Corporation he had been employed by Lindsay Realty Corporation as a salesman on a commission basis. After the corporation was formed he was employed by it to sell the campsites on commission. He did not sever his connection with Lindsay Realty Corporation but continued to have a desk in its office next to Lindsay's. He did some work on the Pecan Isle property prior to the time of plaintiff's investment, such as supervising the cutting of grass and trees, and supervising the placing of gravel on the road through the property, but none of this work is involved in the $2,525.00 item. This amount, according to his testimony, was paid to him for services rendered to the corporation after plaintiff invested the $20,000.00. He testified that these services consisted mainly in accompanying Lindsay to Baton Rouge on some occasions and assisting him in his "supervisory" work there.
Rene A. Harris is a graduate engineer. The $800.00 item was paid to him for surveying the island, subdividing it into lots and staking out the lots, all of which work was completed prior to plaintiff's investment. The $187.00 item apparently covers his out of pocket expense in connection with that work, although it is unexplained in the record.
None of the disbursements complained of by plaintiff was ever specifically authorized by resolution of the Board of Directors. Lindsay, Tabony and Harris, the three directors, all testified that they thought that in adopting the resolution of March 13, 1961 by which Lindsay was authorized to perform certain acts for the corporation they had given him full power to handle the corporation's funds as he saw fit. Tabony and Harris also testified that both of them knew from the beginning that payments were being made to each of the directors and fully acquiesced in and approved these payments and all other disbursements made by Lindsay.
Following the filing of plaintiff's suit against Lindsay a meeting of the Board of Directors was called and a resolution was passed ratifying and approving "all of the disbursements made by the said Joseph D. Lindsay from the funds of the corporation from the time of its organization to date". All three directors were present at this meeting but Lindsay recused himself from voting.
We know of no theory upon which Pecan Isle Corporation can recover funds disbursed in payment of legitimate debts owed by the corporation to third persons for gravel, advertising, attorney's fees and other goods and services actually received by it.
Disbursements made to its director-officers belong to a different category due to their fiduciary relationship to the corporation. It is generally held that directors of a corporation are not entitled to recover any compensation or salary for performing the ordinary duties pertaining to their offices unless compensation for such services is provided for in the charter or authorized by a bylaw or resolution of the Board of Directors before the services are rendered.
The general rule is thus stated in 13 Am. Jur. Sec. 1027 at page 975:
"it is accordingly the well-settled rule that the directors of a corporation cannot recover compensation for their services when rendered in the line of their duty as such, whether eo nomine as directors, officers, members of committees, or otherwise, unless compensation for such services is expressly provided for or agreed upon in the charter, bylaws, or articles of incorporation, or by a resolution of the board of directors or stockholders before the services are rendered. This rule is applicable to a director who renders services as president, vice-president, secretary or treasurer of the corporation."
And in Fletcher's Cyclopedia of Corporations, Vol. 5, Ch. 16, Sec. 2109, p. 475, the rule is expressed as follows:
"As a general rule directors or trustees of a corporation are not entitled to recover any compensation or salary for *266 performing the usual and ordinary duties pertaining to their office, unless compensation for such services is provided for in the charter or authorized by a bylaw or resolution of the board of directors before the services are rendered. In other words they cannot recover upon an implied contract for what the services were reasonably worth, for custom and their fiduciary relationship repel any implication of a contract that official services are to be paid for. Regardless of the value of such services, the law will not imply a promise on the part of the corporation to pay, and it is immaterial that the services were performed with the expectation of compensation, or with the general understanding among the directors themselves that they should receive compensation * * *."
Fletcher also points out in Section 2111 at page 482 that the rule applies to directors who seek to recover for services performed as officers.
In Stafford's Estate v. Progressive Nat. Farm Loan Ass'n, 207 La. 1097, 22 So.2d 662, the Supreme Court held that resolutions fixing compensation to corporate officers or directors can have no retroactive effect but must apply only to future salaries. And in Crichton v. Webb Press Co., 113 La. 167, 36 So. 926, 67 L.R.A. 76 the Supreme Court said:
"The salaries as fixed are not too large, but the resolutions fixing them can, as a matter of course, have operation only for the future. There cannot be any retroactive increase of salary, or voting of back pay."
The rule above stated has application to compensation paid directors for the performance of the usual and ordinary duties of directors and officers. It is now generally held that if directors or officers render unusual or extraordinary services not within the line of their ordinary duties the circumstances may give rise to an implied promise to pay compensation.
"* * * according to the great weight of authority, if a director or other officer renders services clearly outside of his duty as such, at the request of the corporation or board of directors, with the understanding that they are to be paid for, the law will imply a promise to pay what they are reasonably worth, and in such cases it is not necessary that there be a special agreement to pay, or precedent resolutions, charter provisions and the like, providing for compensation. And using capital assets of a corporation for the payment of wages to directors for services outside their regular duties as directors is not illegal * * *". Fletcher Cyclopedia of Corporations, Vol. 5, Ch. 16, Sec. 2114, p. 494.
The District Judge was of the opinion that the services rendered by the defendants "were not the character of services that the officers and directors would ordinarily be presumed to render without compensation, and it was not to be expected that they would not be reimbursed the expenses incurred".
It strikes us however that the services performed by Lindsay for which his creature corporations were paid $5,400.00 were no more than the usual and ordinary duties pertaining to his office as president. The principal thing that he did was to try to find salesmen who would sell the campsites on commission, and neither this nor any of the other things he testified he did were in our opinion outside of or beyond his ordinary official duties.
The services performed by Tabony were principally in assisting Lindsay in performing these duties. Clearly the situation did not call for any assistance at the expense of the corporation, and Tabony cannot be compensated for performing services which Lindsay should have performed himself.
Since compensation for the services rendered by Lindsay and Tabony was not expressly provided for by proper resolution of the Board of Directors before the services *267 were rendered, Lindsay's action in making the payments cannot afterwards be ratified by any action of the board.
The surveying services rendered by Harris were clearly outside of his duties either as an officer or director, the services were rendered with full knowledge on the part of the members of the board and it was apparently well understood at all times that they were to be paid for. The amount for these services does not seem to be unreasonable.
It would seem that the expenses incurred by Lindsay and Harris could be considered proper debts of the corporation provided they were reasonable and redounded to the benefit of the corporation. (See Fletcher Cyclopedia of Corporations, Vol. 5, Ch. 16, Sec. 2141, p. 582). There is no presumption that the expenditures were made gratuitously, and it was not to be expected that they would not be reimbursed. However in this case the record reveals that there was never any itemization of these expenses and no proof of the fact that the amounts thereof were actually expended for the benefit of the corporation except the uncorroborated statements of the recipients of the payments. It would serve no good purpose to remand this case for an accounting of the items paid for expenses as was done in Crichton v. Webb Press Co. supra for the reason that the record shows that no vouchers or verifications of the expenses were kept.
Under the provisions of LSA-C. C.P. Art. 595, Lester F. Alexander Jr., who brought this stockholder's derivative action is entitled to recover from the corporation (out of the proceeds of the judgment hereinafter rendered in favor of the corporation) the amount of the costs herein incurred by him plus a reasonable attorney's fee. We are of the opinion that an attorney's fee of 20% of the corporation's recovery hereunder would be reasonable.
For the foregoing reasons the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of Pecan Isle Corporation and against (a) Joseph D. Lindsay in the full sum of $5,955.00; (b) against Bernard W. Tabony Jr., in the full sum of $2,525.00; and (c) against Rene A. Harris in the full sum of $187.00. It is further ordered, adjudged and decreed that there be judgment herein in favor of Lester F. Alexander Jr., and against Pecan Isle Corporation for all costs incurred by him in both courts, plus an amount as attorney's fees equal to 20% of all sums collected by Pecan Isle Corporation as a result of this judgment.
Reversed and rendered.

ON APPLICATIONS FOR REHEARING
PER CURIAM.
Appellant, Lester F. Alexander, Jr., applied for a limited rehearing urging error only in the manner of our assessment of costs.
The "expense of litigation" authorized by LSA-C.C.P. Art. 595 to be allowed the representative party out of the fund made available to the corporation refers to expenses of litigation other than ordinary taxable court costs. Taxable court costs should, except for good reason to the contrary, be assessed against the party cast in the litigation. See Fletcher Cyclopedia of Corporations, Vol. 13, Ch. 58, Sec. 6044-5, p. 670 et seq.
Since we are authorized to correct our decree without granting a rehearing, appellant's application for rehearing is denied and our decree is now amended so as to assess all ordinary taxable court costs in both courts against the defendants Joseph D. Lindsay, Rene A. Harris and Bernard W. Tabony, Jr., and to relieve Pecan Isle Corporation from the payment of such costs, the decree otherwise to remain the same.
The application for rehearing filed by appellees is denied.
Decree amended.
Both applications denied.