SAMUEL, Judge.
On April 10, 1967 plaintiff filed this suit against The J. M. Burguieres Company, Ltd. and six of its seven directors,[1] for allegedly illegal and negligent action of the directors in compromising certain indebted-nesses owed the corporation by three family groups related to its stockholders and/or directors, and in failing to recover certain corporate real estate allegedly lost or diverted to others.
The defendants filed exceptions of no right of action, no cause of action, and vagueness, and the trial court rendered judgment maintaining these exceptions but permitting plaintiff to amend his petition in the following respects: (1) to allege the date on which he acquired his stock in the defendant company; (2) to allege, if he could, he took no action to obtain the as *507 sistance of other stockholders in requiring the directors to take the action sued upon because such effort would have been vain and useless; (3) to limit his action to a derivative action against the directors for damages to the defendant corporation resulting from their negligence in releasing alleged outstanding debts of stockholders and directors; and (4) to allege with definiteness the legal description of the lands he claims have been lost, the alleged adverse claimant of each parcel of land, and the particular acts of negligence of the directors as they may relate to each tract of land.
Plaintiff filed an amended petition. However, he made no attempt to cure the original petition’s defects relating to the lands; in his amended petition he requested that the matters concerning the missing lands be continued to a future date. In response to that request, the issues concerning the lands were dismissed without prejudice.
The amended petition was filed in proper person. A short time after that filing his attorney withdrew and thereafter, both in the trial court and in this court, plaintiff has appeared in proper person. The amended petition is quite lengthy and does not separate the issues as an attorney’s pleadings would. Consequently, after entering into a review of the pleadings with plaintiff and counsel for defendants, the trial judge isolated four issues to be decided.
After a trial on these four issues, judgment was rendered in favor of the defendants on the merits and on various exceptions, dismissing plaintiff’s suit. Plaintiff has appealed.
One of the issues so isolated was whether Denis P. J. Burguieres or his heirs would be liable to the corporation solely by virtue of his signing, while president of the defendant corporation, a promissory note for the corporation upon which he indicated his official capacity as treasurer. Plaintiff contends that since Denis P. J. Burguieres was president and not treasurer, he had not signed the note in his proper representative capacity and was therefore personally liable thereon. He further argues that one of the defendants, Edward E. Burguieres, is liable on the note as an heir of Denis P. J. Burguieres.
The note is dated January 13, 1934, payable to the order of Jules M. Burguieres, in the principal amount of $178,313.04 and due on March 1, 1934. Plaintiff admits in his petition that the defendant corporation always recognized Denis P. J. Burguieres’ authority to execute the note and that it honored the note by payment. There is no evidence to indicate that Denis P. J. Bur-guieres ever made any payment on the note or acknowledged liability thereon, nor is there any indication in the record that any demand had ever been made on him or his heirs for its payment. The record is devoid of any evidence relative to the validity, consideration given, demand or any other matter regarding the note; no evidence of any sort was introduced other than a photocopy of the face of the note. To the claim against him personally, Edward E. Burguieres filed an exception of prescription.
Clearly, no cause of action was stated or proved by plaintiff on the note issue. Moreover, more than 33 years having passed since the due date of the note without suit having been filed, and with no evidence showing interruption or suspension of prescription, we find the trial court was correct in dismissing plaintiff’s suit against all defendants on this issue and in maintaining Edward E. Burguieres’ exception of prescription (C.C. Art. 3544).
The second issue isolated by the trial court was whether plaintiff had standing or the legal right to raise the issue of whether his father, C. Patout Burguieres, should have received the identical number of shares as those shareholders who organized the corporation and *508 were issued shares in 1901. Plaintiff’s father received his stock in 1910, and the evidence on the merits tends to show the stock was issued to plaintiff’s father at its value as of 1910. An exception of no cause or right of action was filed by defendants on the basis that only plaintiff’s father, C. Patout Burguieres, had the right to claim he should have been issued more shares that he was in fact issued. Plaintiff’s father is still alive and testified at the trial. Plaintiff neither alleged nor proved that he was acting as agent for his father, and his father was never joined as a party plaintiff. Consequently, the trial court was correct in dismissing plaintiff’s claim since he had no right to assert his father’s cause of action under these circumstances.[2]
Third, the trial court isolated the issue of whether the shares of stock of the defendant company issued in 1901 had been paid for and legally issued. Plaintiff offered no evidence on this point in the presentation of his case. During the course of the trial, the defendants offered, for the sake of expediting the matter, to prove the facts concerning payment for the original issue of stock. The trial court noted that while he was reversing the order of proof, he was not reversing the burden thereof. The defense produced Samuel T. Bur-guieres, the secretary of the corporation, who identified the minutes of the organizational meeting. The minutes showed the identity of the original stock subscribers and the authorization to purchase at a partition sale of certain plantations named therein in the succession of Jules M. Bur-guieres (their father). Defendants offered in evidence a certified copy of the sheriff’s sale showing purchase of the land by the corporation on March 16, 1901 for $310,000; a certified copy of an act of partition among the heirs of Jules M. Bur-guieres dated June, S, 1901, showing the mode of division of assets of his succession; and a certified copy of a transfer and assignment to the corporation by the adult heirs of.Jules M. Burguieres of assets which they had received as a result of the above partition of his succession for 4,310 shares of stock of the defendant corporation in return for $431,050.20. Attached to the transfer was a copy of the minutes of the meeting of the board of directors of the defendant corporation of June 8, 1901, wherein the directors agreed to accept the transfer from Denis P. Bur-guieres, Joseph E. Burguieres, Mrs. Louise M. Burguieres, Miss Florence M. Bur-guieres, and Jules M. Burguieres, the original stockholders, of their share from the partition of the succession of their father at the price of $431,050.20 in exchange for 4,310 shares of stock in the defendant corporation having a par value of $131,000.
In addition, defendants offered the testimony of Roland Breaux, certified public accountant, who had handled the corporation’s accounting affairs since 1962. Mr. Breaux testified he was familiar with the records of the corporation and had been requested to make an examination of its books to determine the propriety of the issuance of its stock. He had prepared a report dated November 21, 1974, which showed in part that a journal entry made on June 15, 1901 showed a total of $431,000 transferred from the shareholders in exchange for their stock. Breaux further testified he obtained the information from the original corporate records and also that the corporate records were present in the court at the time of his testimony for the plaintiff’s inspection.
The record therefore contains much evidence by the defendants to show that the stock issued in 1901 to the original shareholders was paid for. The record is devoid of any evidence sustaining plaintiff's position. Consequently, the plaintiff having failed to carry his burden of proof, the trial court correctly found for the defendants on the third issue involving the stock.
*509 The final issue defined and stipulated for trial was whether the corporation’s directors behaved illegally and negligently in compromising certain indebted-nesses owed to the corporation. The evidence shows the debts compromised were open accounts arising from advances by the corporation and payments made by it many years prior to the trial for various living costs incurred by the then stockholders, such as bills for doctors and nurses services, medicine bills, church pew rentals, and other such personal expenses. These open accounts had been shown on the yearly statements of the corporation for numerous years but there is no evidence that a statement had ever been given to any of the stockholders other than Jules and Ernest Burguieres, who were then the officers of the corporation.
In 1931 the treasurer of the defendant corporation wrote to Denis P. J. Bur-guieres, Ernest A. Burguieres, Mrs. Louise Burguieres Syme, and Mr. Henry I. Bur-guieres, acknowledging receipt of certain shares of stock owned by them in the corporation and stating that this stock would be held by the defendant corporation until the open accounts had been paid. There is no evidence of any writing by the individuals who owned the stock acknowledging the indebtedness. In 1962, pursuant to a motion by plaintiff’s father, the stock in question was returned to its registered owners, with the proviso that such return would not be construed as a release of liability of the indebtedness. In 1964, at an annual shareholders’ meeting, a question was raised concerning the “family debts” still carried on the corporate books. At that meeting it was suggested it would be appropriate to establish if the debts had any actual legal validity, because of their age, lack of detailed corporate records over the past 50 years, and other problems involved therein.
One family group acknowledged its liability and paid $3,700 to the corporation. Attorneys for the two other family groups contended the corporation never furnished statements of account until recent years and these statements, when issued, gave only totals without any itemization describing what the debts stood for. They also contended that prescription had run and the corporation would be guilty of laches for not having provided the family members with sufficient information at a time when they could have investigated and determined the accuracy of the debts.
Subsequent to these discussions, the attorneys proposed a compromise of 20% of the alleged indebtednesses shown on the books. The attorney for the corporation testified he considered an attempt to collect these debts quite difficult and such an attempt would result in expensive litigation. He presented these opinions to the board of directors on January 13, 1967. A special meeting of the board of directors was held on January 25, 1967 to consider the question of these indebtednesses. As a result of that meeting, the board agreed to recommend to the stockholders the compromise of the indebtedness on the basis of 20% of the amounts shown on the corporate books (with the proviso that 80% of the $3,700 paid by one family group would be reimbursed to it in order to effect equality among the family groups). At the annual meeting of the shareholders on January 30, 1967, the board of directors’ proposal for the compromise was read to the stockholders and the proposed settlement was approved by all shareholders except plaintiff and his father.
The corporate attorney testified that at both the meeting of the board of directors and at the stockholders meeting of January 30, 1967, he advised those present that in his opinion the obligations asserted by the corporation against the three family groups[3] were invalid because substantial *510 defenses existed, including prescription, laches and the absence of statements being given to any of the individuals detailing the charges on the accounts. He also outlined the substantial expense involved in connection with any such suit. The corporation’s counsel testified that all of these factors were weighed by the directors and the stockholders and they acted on the basis of his legal advice.
At the shareholders meeting in question, 5,770.834 shares were present or represented of a total of 6,000 corporate shares. This represented 96%[4] of the total stock of the corporation. Plaintiff and his father owned slightly more than 11% of the total shares of the corporation between them. Their votes were negative, while all of the remaining voting shares were affirmative, with the result that after deducting the votes from the affirmative votes, slightly more than 84% of the total shares of stock were voted in favor of the compromise. The debtors themselves or their heirs owned approximately 45.15% of the total 6,000 corporate shares. Their votes must be disregarded because we do not feel a shareholder can validly vote to forgive a corporate indebtedness owed by him.[5] However, even disregarding those votes, the measure nonetheless carried because out of the remaining 38% of the shares eligible to vote a majority of 26% of that figure voted affirmatively while 12% voted negatively.
On the basis of the recommendation by the board of directors and the action of the stockholders, the compromise agreement on the open account indebtednesses was executed, and this compromise was made known at the board of directors meeting of May 26, 1967. The trial court found as a fact the compromise agreement was authorized by the stockholders, no fraudulent practices were involved, and that, considering the probability that the indebtednesses had prescribed, the compromise was reasonable and proper under all of the facts.
Under the circumstances, there can be no liability on the part of the defendant directors or the corporate officers resulting from effecting the compromise by the board and approved in advance of its execution by a majority of the stockholders.[6] If a director can be relieved from liability for negligent acts when such acts are approved by all of the stockholders,’[7] it can hardly be said that directors’ action taken only after due consideration by both the board of directors and the stockholders, both approving said action in advance by majorities, can subject a director of a corporation to liability in a stockholders’ derivative suit. Revised Statute 12:91 imposes upon officers and directors of a corporation a fiduciary relationship to the corporation and to its shareholders; it requires that they discharge their duties in good faith and with such diligence as an ordinarily prudent man would exercise under similar circumstances. In this case, the directors, having first openly proposed the compromise and then having openly submitted it to the shareholders for their approval, did not breach this fiduciary relationship. In effecting a compromise, the directors and officers merely effected the will of the shareholders for whom they acted after making complete disclosure of the proposed settlement agreement. Under the circumstances, the actions of the officers and directors in compromising the claims against the three family groups were in effect the actions of the shareholders. Plaintiff and his father were overwhelmingly outvoted on the proposition, *511 and under the circumstances presented in the record, merely being outvoted gives them no cause of action against the directors.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Those six directors are Mrs. Marie Louise Syme Ver Beck, Abner E. Hughes, Ernest A. Burguieres, Jr., Edward E. Burguieres, Samuel T. Burguieres and Mrs. Marion Christ Clerc. The seventh director, who was not named a defendant, was O. Patout Burguieres, the jdaintiff’s father.

. See Articles 681 and 094, Louisiana Code of Civil Procedure.

. The groups consisted of the families of Henry I. Burguieres, Mrs. Louise Burguieres Syme, and Ernest Burguieres, the latter having paid the amounts previously.

. This, as well as following percentage figures, is an approximation within 1% or less.

. See Crichton v. Webb Press Co., 113 La. 167, 36 So. 926, 931-932.

. Defendants cite as authority for this proposition 3 Fletcher, Corporations, § 998 at page 542.

. See Alexander v. Lindsay, La.App., 152 So.2d 261.